Fabricant, J.
INTRODUCTION
The plaintiff, an employee of J.J. O’Brien on a construction project for Boston Edison Company, filed this action against Boston Edison Company for personal injuries suffered in an accident at the worksite. Boston Edison joined O’Brien, claiming it had agreed to indemnify Boston Edison. This matter is now before the Court on Boston Edison’s and O’Brien’s cross-motions for summary judgment on the third-party claims. For the reasons set forth below, Boston Edison’s motion is ALLOWED in part and DENIED in part, and O’Brien’s motion is DENIED in part and ALLOWED in part.
BACKGROUND
The materials submitted by the parties in support of and in opposition to these motions present the following.[1] On March 25, 1993, Boston Edison sent a number of utility contractors, including O’Brien, a standard Boston Edison “Request for Quotation” form (R.F.Q.), soliciting quotations to perform manhole reconfiguration and conduit installation work. The R.F.Q. form states, “THIS IS NOTAN ORDER and does not authorize furnishing any materials or services whatever.” The form makes no reference to indemnification. On April 6, 1993, O’Brien responded to the R.F.Q. by submitting its bid in the form of a price quotation entered on the bottom of the R.F.Q.
Boston Edison’s usual practice is to send a document referred to as “Performance Specifications” to potential bidders in order to be certain that “the bidders are fully informed of the types of obligations that they will be entering into with Boston Edison when they get an Edison purchase order.” The Performance Specifications set forth all the terms and conditions that appear on the back of Boston Edison’s standard purchase order form. Among them is paragraph 20, entitled “Indemnification,” as follows:
The Vendor shall indemnify and save harmless the Company, its officers, employees and agents from all claims for damage to property or person, including death, suffered by any persons (including the Vendor or his servants or agents) while engaged in performing the Work or while using any tools, equipment or materials furnished by the Company.
In this instance, however, Boston Edison offers no evidence to rebut O’Brien’s affidavit asserting that it never received the Performance Specifications.
On April 21, 1993, Boston Edison issued a purchase order to O’Brien. The purchase order, again on a standard Boston Edison form, requests that the recipient furnish labor and materials for certain work, at the prices quoted in its bid.[2] The front of the purchase order contains the following language: “The Vendor Must Acknowledge Receipt Of This Order Promptly And State Whether Or Not It Is Accepted.” The front of the purchase order also states, in boldface capital letters:
IT IS UNDERSTOOD AND AGREED THAT VENDOR, IN ACCEPTING THIS ORDER, ALSO ACCEPTS ALL THE CONDITIONS PRINTED ON THE BACK OF SAME INSOFAR AS THEY ARE NOT INCONSISTENT HEREWITH.
The reverse side of the purchase order contains, in numbered paragraphs in extremely small print,[3] each with a boldface, capitalized title, the ‘Terms and Conditions of Purchase.” Paragraph 20 of the Terms and Conditions is the indemnification provision, as set forth in the Performance Specifications. Paragraph 3 of the Terms and Conditions contains the following language:
This Purchase Order becomes a binding contract on the terms and conditions set forth herein when accepted by the Vendor either by acknowledgment (by an authorized signature on the Purchase Order) or by any conduct by Vendor which recognizes the existence of a contract pertaining to the subject matter hereof.
*343 After O’Brien received the purchase order, it performed the conduit construction work between May 30 and June 29, 1993, billed Boston Edison, and accepted payment. It did not, however, state its acceptance of the order, either verbally or in writing, except insofar as its performance and billing might constitute such a statement. O’Brien never objected to the indemnity provision, or any other provision on the reverse side of the purchase order, nor does it appear that anyone at O’Brien ever read the indemnity provision, or that any discussion about it ever occurred between the parties.
O’Brien had previously performed work for Boston Edison pursuant to fourteen (14) separate purchase orders issued between August of 1987 and August of 1990. All but one of the earlier purchase orders related to conduit construction work. Each of the prior purchase orders bore the same terms and conditions as the purchase order here. No one from O’Brien ever objected to those terms and conditions, or ever discussed them with Boston Edison.
The plaintiff was injured on the job on June 29, 1993. He received workers’ compensation benefits from O’Brien’s insurer, and filed this suit against Boston Edison. Boston Edison demanded indemnification from O’Brien pursuant to the purchase order. When O’Brien refused, Boston Edison joined O’Brien, claiming indemnification and contribution.
DISCUSSION
A. Summary Judgment Standard
This Court grants summary judgment only where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). In this case, as evidenced by their cross-motions for summary judgment, both parties agree that there are no genuine issues of fact material to the third-party claim. Accordingly, summary judgment is the proper means to decide the issues of law in dispute.
B. Count I — Indemnification by O’Brien
Boston Edison contends that the undisputed facts establish its contractual right to indemnification by O’Brien under the terms of the purchase order. O’Brien argues that the indemnification clause on the back of the purchase order is unenforceable because that provision never became part of any contract between it and Boston Edison. “Under Massachusetts law, a contract-based right to indemnification exists only if there is a binding contract between indemnitor and indemnitee in which such right is expressed or from which it can be fairly implied.” Kelly v. Dimeo, Inc, 31 Mass.App.Ct. 626, 628 (1991) (citing H.P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69, 77 (1976)).
The same issue was considered and resolved in Cindy L. Thor v. Boston Edison Company, & Another v. Tad Power Temporaries, Inc., Plymouth Superior Court No. 95-1617 (O’Brien, J., May 29, 1998). There, however, Boston Edison had sent the Performance Specifications to the bidder, so that the purchase order, when it ultimately arrived, merely reiterated terms disclosed to the bidder prior to the bid. This factual difference requires a different analysis from that applied in Thor. Ultimately, however, the outcome is the same.
The R.F.Q. issued to O’Brien was a request for bids, and did not constitute an offer. See, e.g., New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988), and cases cited. As both parties argue, O’Brien’s bid did constitute an offer to Boston Edison. When Boston Edison later sent its purchase order to O’Brien, it contained additional terms not contained in O’Brien’s offer. The indemnification provision, at least, was a material addition, the inclusion of which would result in surprise or hardship if incorporated without express awareness by the other parly. See Ionics, Inc. v. Elmwood Sensors, Inc., 110 F.3d 184, 187 (1st Cir. 1997). A “substantial variation in contract terms incident to a purported acceptance is not a binding acceptance but a counter offer.” Massachusetts Housing Finance Agency v. Whitney House Associates, 37 Mass.App.Ct. 238, 241 (1994). Thus Boston Edison’s purchase order was a counteroffer, and the determinative question is whether O’Brien accepted.
O’Brien argues that it did not accept, because it never stated its acceptance, as the purchase order said it must. O’Brien relies on David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., 8 Mass.App.Ct. 237 (1979). There, although the offeree had not accepted in the manner prescribed, the court upheld a finding that there was a binding agreement, because the offer had not contained a clear expression of intent by the offeror to exclude all other modes of acceptance. Id. at 240-241.[4] Here, although the purchase order indicated that the bidder must “state” whether it accepted the purchase order, it did not say that acceptance in some other form, such as by performance and billing, would be ineffective. To the contrary, the language on the back of the purchase order form expressly authorized acceptance “by any conduct by Vendor which recognizes the existence of a contract.” It is difficult to imagine conduct more indicative of a contract than performance and billing. See Polaroid v. Rollins Environmental Services, 416 Mass. 684, 690-91 (1993) (“When the offeree accepts the offeror’s services without expressing any objection to the offeror’s terms, the offeree has manifested assent to those terms . . .”); see also Thor, supra at 10:
by completing performance under the terms of the purchase order without objecting to the indemnity clause, and by accepting payment from Boston *344 Edison, [the third-party defendant] recognized the existence of a contract pertaining to the services referenced in the . . . purchase order and accepted the terms contained on the reverse side of the purchase order.
There is no merit to O’Brien’s argument that even if a contract was formed, the lack of conspicuousness of the indemnification clause prevents its enforceability. O’Brien draws an analogy to a disclaimer of warranty, which is unenforceable under the Uniform Commercial Code unless it is conspicuous such that “a reasonable person against whom it is to operate ought to have noticed it.” Hunt v. Perkins Machinery Co. Inc., 352 Mass. 535, 539-40 (1967). See also Magliozzi v. P&T Container Service Co.; Crusader Paper Co., 34 Mass.App.Ct. 591 (1993) (noting, but not applying, conspicuousness test to document proposing additional terms after contract had been reached). Hunt quotes comments to the U.C.C. suggesting that a disclaimer is not conspicuous if it is in the same color and size of type used for the other provisions. 352 Mass. at 540-41. Here, although the print on the back of the purchase order is identical for all provisions, and is far from conspicuous in itself, the capitalized announcement on the front of the form unequivocally notifies its recipient that the back contains significant terms, and that prudence dictates taking full notice of those terms before acceptance.
This Court recognizes, as did Judge O’Brien in Thor, that the question of the existence of a contract is generally one of fact to be resolved by the fact finder. See Tierney, 8 Mass.App.Ct. at 239. Here, however, based on the summary judgment record, O’Brien has failed to raise a genuine factual dispute as to whether O’Brien accepted the purchase order, thereby assenting to the indemnification clause. Accordingly, Boston Edison is entitled to summary judgment on the issue of indemnification.
C. Count II — Contribution
For the same reasons discussed in Thor at 23-24, O’Brien is entitled to summary judgment on Boston Edison’s contribution claim against it.
D. Count III — c. 93A Violations
Both parties also move for summary judgment on Boston Edison’s G.L.c. 93A claim against O’Brien. Boston Edison asserts that because O’Brien breached the purchase order by failing to indemnify Boston Edison, O’Brien’s actions amount to an unfair and deceptive act under G.L.c. 93A.
A breach of contract, standing alone, does not amount to a c. 93A violation. See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451 (1991). Rather, to rise to the level of a c. 93A violation, a breach of contract must involve conduct “in disregard of known contractual arrangements and intended to secure benefits for the breaching party . ...” Id. at 474. See also Ahern v. Scholz, 85 F.3d 774, 798 (1st Cir. 1996) (even knowing breaches of contracts may not violate c. 93A); Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985). Further, “the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979).
Here, the undisputed facts show nothing more than a simple breach of contract, arising from a good faith dispute as to the legal effect of the actions of the parties. Although the Court has rejected O’Brien’s arguments as to the enforceability of the indemnification provision, those arguments were not frivolous, and nothing in the facts presented suggests that O’Brien took the position it did for any ulterior purpose, or in any effort to gain any undeserved benefit. Compare Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. at 475 (“Anthony’s attempt to force HBC to increase Anthony’s compensation,” by refusing to perform its contractual obligation without agreement to such increase, “was a knowing and wilful violation of G.L.c. 93A, §2, as a matter of law”). Accordingly, O’Brien’s motion for summary judgment on the c. 93A claim is ALLOWED.
CONCLUSION AND ORDER
For the foregoing reasons, it is hereby ORDERED:
1. Third-Party Plaintiff Boston Edison Company’s Motion for Summary Judgment Against Third-Party Defendant J.J. O’Brien & Sons, Inc. is ALLOWED as to Count I of the third-party complaint and DENIED as to Count III of the third-party complaint.
2. Cross-Motion of Third-party Defendant, J.J. O’Brien & Sons, Inc., for Summary Judgment Against Boston Edison is DENIED as to Count I of the third-party complaint and ALLOWfED as to Counts II and III of the third-party complaint.

Similar, but not identical, facts appear in Cindy L. Thor v. Boston Edison Company, & Another v. Tad Power Temporaries, Inc., Plymouth Superior Court No. 95-1617 (O’Brien, J.) (May 29, 1998). The material difference between the two cases will be discussed infra.

The purchase order in this case was on the same form discussed in Thor.

The print is in light grey, on blue translucent paper.

O0’Brien also cites New Bedford Gas & Edison Light Co. v. Maritime, Inc., 380 Mass. 734, 736 (1980), for the proposition that employers will not be found to owe indemnity for job site injuries to their employees absent an express contractual agreement. The proposition is inarguable, but begs the question presented here: whether O’Brien accepted the terms set forth on the purchase order, which include express contractual indemnification.
O’Brien also relies on Lovering v. Beaudette; Massasoit Community College, 30 Mass.App.Ct. 665(1991), in which the Court held an indemnity provision in a form rental agreement unenforceable. That case turned on issues of authority to bind an agency of the Commonwealth. Id. at 669-70. No such issues appear here.